UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER GASSEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:16-CV-01663-JAR |
| | ) |
| PAUL JONES, MD, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on competing motions for summary judgment filed by Defendant Paul Jones, M.D. ("Defendant") (Doc. 24) and Plaintiff Christopher Gassel (Doc. 34). Also pending is a Motion for Leave to File Sealed Document filed by Defendant (Doc. 23). As an initial matter the Court will grant Defendant's Motion for Leave to File Sealed Document (Doc. 23), as the documents he seeks to seal, his brief in support of his summary judgment and the exhibits he has submitted in support thereof, include private information relating to treatment Plaintiff has received for medical conditions that are entirely unrelated to this lawsuit. For the following reasons, the Court will deny Defendant's Motion for Summary Judgment (Doc. 24); and deny Plaintiff's Motion for Summary Judgment (Doc. 34).

**I.    Background**

On October 24, 2016, Plaintiff, an inmate in the custody of the Missouri Department of Corrections ("MDOC"), filed this action under 42 U.S.C. § 1983 (Doc. 1). His complaint, as amended and as relevant, alleges that Defendant, a physician employed by Corizon Medical Services ("Corizon"), was deliberately indifferent to his serious medical needs by failing to treat

1

him for a neck injury he suffered in November 2014 (Doc. 4).[1] More specifically, Plaintiff claims that Corizon employees refused to treat his neck injury; and that Defendant refused to treat him on June 25, 2014; September 25, 2014; October 3, 2014; October 10, 2014; and November 13, 2014 (Id. at 5-6). Plaintiff asserts that—between July 16, 2014 and November 17, 2016—he self-declared medical emergencies several times because he was unable to raise his head without experiencing severe pain, and "the dis[c]s of his spine cutting into [his] spinal cord creating severe nerve damage" (Id. at 6). According to Plaintiff, his injuries were so obvious that, on August 24, 2014, an assistant warden ordered the medical department to treat him (Id.). Plaintiff claims that a September 25, 2014 x-ray of his spine then revealed that he urgently needed treatment, but Defendant again refused to see him on September 30, 2014 (Id.). According to Plaintiff, on November 21, 2014, Corizon informed him that "if [he] wanted medical treatment to exhaust [his] grievance process" (Id.). Plaintiff underwent neck surgery in March 2015.[2] (Id. at 5). He claims that the delay in treatment caused him unnecessary pain, as well as severe and permanent nerve damage, physical disfigurement, and loss of muscle tone (Id. at 5-6). For relief, he seeks compensatory damages and an order requiring Corizon to provide him medical treatments that his surgeon has recommended (Id. at 7).

Defendant now moves for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)

---

[1] Plaintiff also named Corizon as a defendant; however, on December 16, 2016, the Court dismissed Plaintiff's deliberate-indifference claim against Corizon for failure to state a claim, pursuant 28 U.S.C. § 1915(e)(2)(B) (Doc. 6).

[2] In his amended complaint, Plaintiff indicates that he underwent surgery on March 30, 2014; however, it is apparent from the limited record before the Court that his surgery was performed in March 2015 (Docs. 25.2 at 16, 20, 23-24).

2

("PLRA") before bringing this action (Doc. 24). Plaintiff has also filed a motion for summary judgment, asserting that he is entitled to judgment on the merits because the undisputed medical evidence establishes that Defendant was deliberately indifferent to his medical needs (Doc. 34).

**II.     Summary Judgment Standard**

The Court may grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Peterson v. Kopp, 754 F.3d 594, 598 (8th Cir. 2014). A moving party bears the burden of informing the Court of the basis of its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).

Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law. Husinga v. Federal-Mogul

Ignition Co., 519 F. Supp. 2d 929, 942 (S.D. Iowa 2007). "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." Wermager v. Cormorant Twp. Bd., 716 F.2d 1211, 1214 (8th Cir. 1983).

### III. Defendant's Summary Judgment Motion

In his Motion for Summary Judgment, Defendant argues that Plaintiff failed to exhaust his administrative remedies before he filed this lawsuit, as is required by the PLRA (Doc. 24). In Defendant's view, Plaintiff failed to properly exhaust his administrative remedies because he did not file an informal resolution request ("IRR") within fifteen days of his neck injury (Doc. 25 at 4-5). In support of his motion, Defendant has submitted Plaintiff's grievance records which reveal the following relevant facts. On May 15, 2015, while he was housed at the Moberly Correctional Center ("MCC"), Plaintiff filed an IRR complaining about the treatment he was receiving for a neck injury (Docs. 25.1; 25.2 at 20-26).[3] In his IRR, Plaintiff stated that he had injured his neck in November 2014; that Defendant and other prison medical staff had repeatedly told him nothing was wrong with him, and refused to evaluate him or treat him for the injury; and that he had been threatened with discipline if he continued to self-declare emergencies for symptoms arising out of the injury. Plaintiff further indicated that he had been unable to hold his head up without experiencing severe pain and loss of feeling in his left arm, left chest, and the

---

[3] The date on which Plaintiff filed his IRR is not entirely clear from the record before the Court. The IRR reflects a date of May 15, 2015 on its upper right hand corner. However, "5-22-15" is written in a box for the "Date Staff Received IRR" (Doc. 25.2 at 20). Moreover, Defendant's response to Plaintiff's subsequent grievance indicates that the IRR was filed on May 15, 2015 (Id. at 16), yet the response to Plaintiff's appeal from the denial of his grievance states that his IRR was filed on May 22, 2015 (Id. at 14). In light of this uncertainty and viewing the facts in the light most favorable to Plaintiff, the Court will treat the IRR as filed on May 15,

4

left side of his face. He also reported that Defendant had refused to see him on at least three occasions, instead telling him he had only a pinched muscle and prescribing him ibuprofen and muscle rubs. According to the IRR, at that time, Plaintiff was experiencing muscle spasms, and his left pectoral and left triceps muscles were severely atrophied. Plaintiff also stated that an MRI had revealed severe damage to his spine, and that he had undergone extensive neck surgery in March 2015, or eight months after he first sought care for his injury. In addition, he indicated that, as of the date of his IRR, he was still unable to use his left pectoral or left triceps muscles, and he was experiencing facial numbness. He reported that he continued to suffer great pain, and that he was not being provided medications and physical therapy that his surgeon had prescribed (Doc. 25.2 at 20-26).

On June 9, 2015, before he received a response to his IRR, Plaintiff was transferred to the Jefferson City Correctional Center (Doc. 25.1 at 4). In July 2015, Plaintiff filed a formal grievance, again complaining that he was receiving inadequate treatment for his neck injury (Doc. 25.2 at 17-19). In his grievance, Plaintiff stated that he was being denied pain medications and muscle relaxers his surgeon had prescribed; that Corizon physicians had not been properly evaluating him and sometimes not even seeing him; and that Defendant was refusing to see him or follow his surgeon's orders (Id. at 18-19). On August 28, 2015, Defendant, in his role as the MCC Medical Director, denied Plaintiff's grievance on the grounds that he had not filed his IRR and grievance until more than a year after his neck injury, and that he had received appropriate medical care (Id. at 16). Plaintiff appealed the denial of his grievance (Id. at 15). His appeal was thereafter denied with the following explanation:

---

2015, for purposes of resolving the instant motions.

> I understand your one original IRR complaint to be you contend that you injured your neck area in July 2014 after jumping down off the top bunk. You state you did not receive the care you needed.
>
> Upon review of your medical record, grievance records and investigation of your concern I found this grievance was not filed per MDOC policy. Per policy any offender who wishes to file a grievance on a removable issue should do so within 15 calendar days from the date of the alleged incident. Your record notes that you filed this grievance on May 22, 2015 well over the 15 calendar days per policy. Based on the above information this Grievance is considered abandoned per MDOC policy.
>
> Conclusion: Based on the above information, your Grievance Appeal is not supported, as outlined above. Your record shows appropriate care and treatment for your medical issues by licensed, qualified healthcare professionals with many years of experience. We rely upon the independent, discretionary medical judgment of the site physicians to determine what care, medication and treatment is needed.

(Id. at 14). Plaintiff opposes Defendant's motion for summary judgment, arguing that his grievance records establish that he did exhaust his administrative remedies, and asserting that he did not fully recognize Defendant's deliberate indifference until he gathered information from outside medical providers (Doc. 35). In his motion for summary judgment, Plaintiff also claims that Defendant's exhaustion defense is "inaccurate" because Plaintiff "could not start to use the 'Grievance Process' until he was fully aware of the exact nature and extent of the injuries inflicted by [Defendant's] acts of Deliberate Indifference" (Doc. 34 at 2).

The PLRA requires "proper exhaustion," i.e., the prisoner's grievance must be in compliance with the agency's deadlines and other procedural rules. Woodford v. Ngo, 548 U.S. 90-91 (2006). To properly exhaust administrative remedies, a prisoner must "complete the administrative review process in accordance with the applicable procedural rules." Id. at 88. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA,

that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 910, 923 (2007). Failure to exhaust administrative remedies is an affirmative defense, and defendants have the burden of raising and proving the absence of exhaustion. Porter v. Sturm, 781 F.3d 448, 451 (8th Cir. 2015).

The Missouri Department of Corrections' Grievance Policy requires an inmate to file an IRR within fifteen calendar days from the date of the "alleged incident." [4] (Doc. 25.3 at 9); see also Baker v. Bryan, No. 4:14-CV-333-JAR, 2015 WL 7535142, at *4 (E.D. Mo. Sept. 29, 2015). It further provides that "each [IRR] and grievance is limited to one grievable issue and should not be expanded to include other issues at any stage of the review process (Doc. 25.3 at 6). However, "MDOC procedure does not require a prisoner to file separate IRRs for each claim against each prison official arising out of an 'alleged incident'; a prisoner need only state 'the subject of the complaint' in the IRR." Taylor v. Null, No. 4:13-CV-1065-CEJ, 2015 WL 1006096, at *2 (E.D. Mo. Mar. 5, 2015) (quoting MDOC, D5-3.2 Offender Grievance Procedure, effective Jan. 2, 2009).

The Court is not persuaded by Defendant's argument that the Grievance Policy required Plaintiff to file his IRR within fifteen calendar days of his neck injury. See Jones, 549 U.S. at 923 (the boundaries of proper exhaustion are defined by the requirements of the prison policy). More specifically, the Court concludes that the "subject of the complaint" or the "alleged incident" about which Plaintiff complained in his IRR was not his neck injury, but was instead Defendant's deliberate indifference to his serious medical needs arising out of that injury. As

---

[4] Defendant has submitted a copy of the MDOC Offender Grievance Policy, which became effective on January 1, 2015 (Doc. 25.3). He has not however, submitted a copy of the Grievance Policy that was in effect at the time of Plaintiff's November 2014 injury and the

such, to comply with the Grievance Policy under the facts of this case, Plaintiff had to file his IRR within fifteen calendar days of Defendant's deliberate indifference to his medical needs, which he claims spanned a period of months, i.e., from the date of his injury until at least the date of the IRR. See Taylor, No. 4:13-CV-1065-CEJ, 2015 WL 1006096, at *2; see also Baker, 2015 WL 7535142, at *4 (prisoner-plaintiff's IRR complaint was a single "alleged incident," even though it contained allegations spanning over the course of several days and involving multiple corrections officers, as the alleged wrongful activities arose from the same security measure). Because Plaintiff alleged in the IRR, and later in his grievance, that Defendant's deliberate indifference to his medical needs continued unabated at least as of the time he filed his IRR, the Court concludes that, construed in the light most favorable to Plaintiff, see Celotex, 477 U.S. at 331, Plaintiff filed his IRR within fifteen calendar days of the "alleged incident," consistent with the requirements of the Grievance Policy, see Woodford, 548 U.S. at 88, 90-91.

In addition, the Court is not persuaded by Defendant's argument that, in order to properly exhaust any claim of deliberate indifference to a prisoner's serious need for treatment for an injury under the Grievance Policy, a prisoner must file an IRR within fifteen calendar days of the injury itself. The PLRA's exhaustion requirement "hinges on the 'availability' of administrative remedies: [a]n inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." Ross v. Blake, 136 S. Ct. 1850, 1858 (2016). "An inmate is require to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complaint of.'" Id. at 1859 (quoting Booth v. Churner, 532 U.S. 731, 738 (2001)). An administrative procedure is unavailable when, inter alia, it "operates as a simple dead end—with

---

fifteen calendar days thereafter.

officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. (citing Booth, 532 U.S. at 736). Under Defendant's proposed interpretation of the Grievance Policy, prisoners would be foreclosed from seeking relief for constitutionally inadequate medical care they receive for their injuries, so long as they receive adequate treatment for the first fifteen calendar days after their injuries. Where, as here, a prisoner alleges that a prison official was deliberately indifferent to his medical needs beyond the first fifteen calendar days post-injury, he would be unable to exhaust administrative remedies under Defendant's view of the Grievance Policy's IRR filing deadline. As such, even if the Court were persuaded by Defendant's argument that the Grievance Policy requires inmates to file IRRs within fifteen calendar days of their injuries, the Court would nevertheless conclude that, under the facts of this case, the Grievance Policy, so construed, was not available to Plaintiff for purposes of the PLRA's exhaustion requirement. See Ross, 136 S. Ct. at 1859. For these reasons, the Court concludes that Defendant has not shown that he is entitled to summary judgment based on Plaintiff's failure to exhaust administrative remedies. See Woodford, 548 U.S. at 90-91; Porter, 781 F.3d at 451. Therefore, the Court will deny Defendant's motion for summary judgment.

**IV.    Plaintiff's Summary Judgment Motion**

Plaintiff also moves for summary judgment, arguing that the undisputed facts establish that Defendant was deliberately indifferent to his serious medical needs (Doc. 34). In response, Defendant argues that Plaintiff's summary judgment motion should be denied because it does not include a statement of undisputed material facts or any supporting exhibits. Alternatively, Defendant seeks an extension of time to respond to Plaintiff's motion until after the Court rules on Defendant's motion for summary judgment (Doc. 36). The Court concludes that Plaintiff's

motion for summary judgment on the merits is premature because, under the Case Management Order, the parties have until June 17, 2017 to complete discovery in this matter, and dispositive motions are not due until July 17, 2017. As such, the Court will deny Plaintiff's motion for summary judgment without prejudice to him submitting a properly supported motion after the close of discovery.

**V.    Conclusion**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Leave to File Sealed Document (Doc. 23) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Paul Jones, M.D.'s Motion for Summary Judgment Based on Exhaustion (Doc. 24) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Christopher Gassel's Motion for Summary Judgment (Doc. 34) is **DENIED**.

Dated this 1st day of May, 2017.

                                                JOHN A. ROSS
                                                UNITED STATES DISTRICT JUDGE